IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>DANNY REED and<br>TAMMY KNIGHT,<br><br>　　　　　　Defendants. | 8:14CR285<br><br>FINDINGS AND<br>RECOMMENDATION |

　　　　This matter is before the court on the motions to suppress filed by the defendant Danny Reed (Reed) (Filing No. 49) and the defendant Tammy Knight (Knight) (Filing No. 44). Reed and Knight are charged in the Indictment with the July 11, 2014, possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). **See** Filing No. 1. Reed and Knight seek to suppress evidence seized as a result of a search warrant for the garage, vehicles, and persons at 207 East 2nd Street, McCook, Nebraska, (the location) issued by the County Court of Red Willow County, Nebraska, on July 11, 2014. The telephonic search warrant was issued upon the sworn testimony of Deputy Joe Koetter (Deputy Koetter) of the Red Willow County Sheriff's Office (RWCSO). The warrant was executed on July 11, 2014.

　　　　Previously, the court denied Reed's request for a hearing pursuant to **Franks v. Delaware**, 438 U.S. 154 (1978), regarding the issuance of the search warrant. **See** Filing No. 43. No party objected to the filed Order. The parties stipulated (Filing No. 47) both Reed and Knight have standing to assert their motions to suppress the search in issue. The parties agreed to an index of evidence (Filing No. 48) containing the search warrant (Ex. A), a transcript of the application for the search warrant (Ex. B), and the return and inventory on the search warrant (Ex. C). With leave of the court, Reed filed his supplemental motion to suppress (Filing No. 49) and brief (Filing No. 49-1) on December 22, 2014. The government filed a brief (Filing No. 50) in response on January 5, 2015, whereupon, the motions to suppress were deemed submitted.

## FINDINGS OF FACT

At 11:27 p.m. on July 10, 2014, Paul Wood, Red Willow County Attorney (Mr. Wood), contacted Red Willow County Judge Anne Paine (Judge Paine) by telephone for the purpose of obtaining a search warrant for the location at 207 East 2nd Street in McCook, Nebraska.[1] Deputy Koetter was placed under oath and informed Judge Paine as follows:

> Okay, this is Lieutenant Joe Cutter [Koetter] with the Red Willow County Sheriff's Office, McCook, Nebraska, Red Willow County. Where I started out tonight at 8:58 I observed several vehicles at a garage which would be located behind the residence at 207 East 2nd. This garage I know to be used by Danny Reed. We've been doing surveillance there on traffic going in and out of the bus – out of that garage. We also made a traffic stop on a Colorado car the license plate did not come back at all, not on record. We stopped the car, Candy Brennan (phonetic) was the driver of the car. We deployed the canine unit. R.C. indicated on the car. During the search, methamphetamine was found in the vehicle in her purse. At that point she was placed under arrest. We took her down to the jail. I - I told her I couldn't make her any promises. I asked her if she'd want to talk to us. She said she would. She said - I says is there anything you could do to help yourself. I said I've already talked to the county attorney and he's willing to work with her. And she said I can get you into the garage that's owed by Danny Reed. I said I need specifics. She said he came back - she told me eight ounces but she wrote down here seven ounces of methamphetamine. She said he left Tuesday, July 8th. He returned on July 10th. She saw - she told me she saw the meth. She said he keeps it in - there's two cabinets at the southwest corner of this garage that are about six feet high. She said there's a lock box. She – or safe lock box. She didn't know exactly which one he kept it in. She also observed two methamphetamine bongs on the coffee table. And at the time she was there she knew the gal as Tammy. I know the pickup to belong to Paul Miller. I know the gal to be Tammy Knight (phonetic). There was some guy there on a motorcycle she did not know. She also knew Cinnamon Rogers (phonetic) who was present. Danny Reed was present and Darla was there but she don't know if she's still there now. These people were all there and she does know that there was meth there at the time she left. We arrested her at 9:54 and we've been working now trying to get where we are right now.
> MR. WOOD: Your Honor, if I may I have a few questions for the affiant.
> THE [Red Willow County] COURT: That'd be fine. Go ahead.
> Q. (BY MR. WOOD:) Deputy Cutter [Koetter], you said that you've been keeping the garage under surveillance. How long, weeks, days, months?
> A. Months. Months.

---

[1] A telephonic search warrant is authorized by Neb. Rev. Stat. § 29-814.03.

2

Q. Approximately how many months?
A. Since about April.
Q. Of this year?
A. Of this year.
Q. All right. what type of activity have you seen since April at this location that based on your training and experience leads you to believe that methamphetamine is being distributed from this location?
A. This is all late night, and I'm saying usually around midnight on, that I will see foot traffic go in. They're not there just a couple minutes then they walk out. I also have vehicles that drive up and down the alley. They will stop. They will get out. They will go in or they will drop somebody off. They will leave for just minutes then come back, pick 'em up. They will also park down by the bottle shop I believe is the liquor store right down the alley from 'em. They will walk up from there and then they will do the - do the same thing. It's just stop and go traffic.
Q. This location where the garage is, is it behind a residence?
A. Yes, it is.
Q. Is that half block what you would consider to be a residential neighborhood?
A. Yes, it is.
Q. It's located just north of B Street which is Highway 634 and 83?
A. Yes, it is.
Q. Is the other half block partially commercial? It is a common alley with the liquor store?
A. Yes, it is.
Q. There's a lot of traffic in and out of that liquor store?
A. Yes there is.
Q. Under surveillance was the liquor store closed or did you see people going to the liquor store rather than this garage?
A. I have seen both traffic because sometimes I'm there before midnight. So until they close there is traffic going to the liquor store.
Q. All right. About how much methamphetamine did you take off of Candace Reed [sic] tonight?
A. We did not weigh it at all but it was - it was enough that we should be able to get a weight on. I did not weigh it at all.
Q. Did she say she acquired it this evening at this garage?
A. I did not ask her that question. I'm sorry.
Q. But she was in there and observed it?
A. Correct.
Q. Okay. When you said someone went to Colorado on July 8th and came back July 10th did she say that was Danny Reed?
A. She said it was Danny Reed, yes.
Q. Does other drug intelligence information tell you that he distributes at this location and brings this meth from Colorado?
A. I've heard Colorado and out of Omaha.
Q. Okay. Did she say where he got it other than just Colorado?

3

A.  She says Fort Collins area because they got stopped out there one time.
Q.  Okay.  Now to demonstrate that she knows what methamphetamine is she's currently pending a number of felony drug charges in the District Court of Red Willow County, Nebraska, is that correct?
A.  Yes, it is.
Q.  And does that include methamphetamine to your recollection?
A.  Yes, it does.
Q.  All right.
A.  And she also told me she knew the two bongs on the coffee table were used for methamphetamine. She said I know what they're used for. Okay.
MR. WOOD: I have no other questions Judge.
THE [Red Willow County] COURT: Okay.
MR. WOOD: Well, no. I - I take that back. I do too.
Q.  The time Deputy Cutter [Koetter] is approximately 11:36 or 11:37 p.m. Are you requesting that this warrant be issued and not be restricted to the daytime?
A.  I would prefer this to be a no-knock warrant, cause she also give us information there are numerous handguns and knives at this residence. And I do know---
Q.  You mean the garage?
A.  In the garage. And I do know that one of the people that are at the garage right now is a convicted felon and she has also got methamphetamine charges on her. And I would like a no-knock warrant because of the danger this possesses.
Q.  Okay the statute says that we have to serve these in the daytime unless there's a good reason not to. It's no longer daytime by definition. Do you want this warrant to be served at night, that is immediately?
A. Yes, it is.
Q. All right. Is that due to the circumstances of the evidence dissipating by distribution to numerous people and do you believe it will be gone shortly?
A. Yes, I do.
Q.  Is that based on your training and experience?
A.  Yes, I do.
Q.  Specifically state the structure and address that you want to search?
A.  Okay, it'll be a garage, a small garage with a car door - or car opening door on the east side for cars to drive in. And there's also a walk in door just on the south side of that door. It is a small white garage and it sits behind the house at 207 East 2nd which is a two story structure.
Q. Do you want the warrant to authorize you to search any persons located in this structure and in the immediate vicinity or on this lot?
A. I would like to get all the vehicles and the people that are there.
Q. Okay.
A. To be able to search them.
Q.  Okay, vehicles on the premises or parked right next to that garage?
A. Well, right now I just go by Paul Miller's truck is there which Tammy

4

> Knight has been driving. It is parked right by the garage door. And so is Danny Reed's pickup. It is registered to him.
> Q. Can you describe those two pickups sufficiently for a warrant?
> A. One is a black Ford pickup. It's about an F250. It's about a '73 model. The other is about a '80 model blue Chevrolet pickup. Both regular cabs.
> Q. And you want to search persons located inside this garage or in the immediate vicinity about this garage - - -
> A. Yes.
> Q. - - - is that right?
> A. Yes I do.

Filing No. 48, Ex. B (TR.) 6-11. Thereafter, Judge Paine issued the search warrant. **See** Ex. A. The search warrant was executed on July 11, 2014, at 12:33 a.m. and numerous items were seized from the location. **See** Exs. A and C.

## LEGAL ANALYSIS

Reed and Knight seek to suppress all evidence seized pursuant to a search warrant for the location at 207 East 2nd Street, McCook, Nebraska, issued by the County Court of Red Willow County, Nebraska, on July 11, 2014. **See** Filing No. 45 - Brief; Filing No. 49-1 - Brief. The parties stipulated both Reed and Knight have standing to assert their motions to suppress the search. **See** Filing No. 47. Reed and Knight contend the affidavit in support of the search warrant did not provide sufficient probable cause to justify the issuance of the search warrant. **See** Filing Nos. 45 at 5; 49-1 at 2. Reed and Knight argue the affidavit contained stale information from an untrustworthy informant. **See** Filing Nos. 45 at 7; 49-1 at 4. Additionally, Reed and Knight contend the affidavit did not contain sufficient information to justify a nighttime search. **See** Filing Nos. 45 at 8; 49-1 at 5. Finally, Reed and Knight argue the good-faith exception to the exclusionary rule does not apply because the affidavit in support of the warrant lacked indicia of probable cause rendering official belief in its existence unreasonable. **See** Filing Nos. 45 at 8-9; 49-1 at 5-6.

### A.   Standing

The parties stipulated both Reed and Knight have standing to assert their motions to suppress the search. **See** Filing No. 47 - Stipulation. "[T]o claim Fourth Amendment protection, a defendant must demonstrate that he personally has an

5

expectation of privacy in the place searched, and that his expectation is reasonable." ***Minnesota v. Carter***, 525 U.S. 83, 88 (1998). The reasonableness of the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." ***Rakas v. Illinois***, 439 U.S. 128, 143-44 n.12 (1978); **see also** ***Smith v. Maryland***, 442 U.S. 735, 740-41 (1979). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." ***United States v. Douglas***, 744 F.3d 1065, 1071 (8th Cir. 2014) (**quoting** ***United States v. Barragan***, 379 F.3d 524, 529-30 (8th Cir. 2004)). "[A]n overnight guest in a home may claim the protection of the Fourth Amendment." ***Carter***, 525 U.S. at 90.

As the owner of the property located at 207 East 2nd Street, McCook, Nebraska, Reed meets the requirements under the Fourth Amendment to assert standing. **See** TR. 6. With respect to Knight, Knight asserts she was an overnight guest at the location. **See** Filing No. 45 - Brief p. 2-3. Based on the government's stipulation both defendants have standing, which the court will adopt, and assuming Knight was an overnight guest at the location, Knight has standing to contest the search.

**B.    Nighttime Search Warrant**

Reed and Knight contend the affidavit in support of the warrant did not provide sufficient information to allow a nighttime search pursuant to Nebraska law. "When evidence obtained by state law enforcement officers is offered in a federal prosecution, the legality of the search and seizure is not determined by reference to a state statute, but rather is resolved by [F]ourth [A]mendment analysis." ***United States v. Howard***, 532 F.3d 755, 760 (8th Cir. 2008) (**citing** ***United States v. Maholy***, 1 F.3d 718, 721 (8th Cir. 1993)). Reed and Knight fail to recognize "[d]etermining whether evidence obtained solely by state officers is admissible in federal court in the first instance, it is usually irrelevant whether a state rule of criminal procedure was violated." ***Id.***

Rule 41(e)(2)(A)(ii) of the Federal Rules of Criminal Procedure provides: "The warrant must command the officer to . . . execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time." However, as

6

there was no federal involvement, Rule 41(e)(2)(A)(ii) did not govern the actions of the Red Willow County Sheriff's Office who applied for and executed the warrant and the state court judge who issued the warrant. Therefore, the issue of suppression in this matter turns on Fourth Amendment analysis. **See** *United States v. Kelley*, 652 F.3d 915, 917 (8th Cir. 2011) ("[F]ederal courts do not suppress evidence seized by state officers in conformity with the Fourth Amendment because of state law violations.").

Nevertheless, the affidavit supports a nighttime search was warranted because Deputy Koetter believed the evidence could dissipate, the informant provided information that there were numerous handguns and knives at the location, and a convicted felon was present at the garage. **See** TR. 10. Deputy Koetter's surveillance was conducted during the nighttime hours when foot traffic was observed, which corroborated the information provided by the informant. **See** TR. 8. Accordingly, the affidavit provided adequate probable cause justifying the timing of the search.

### C.     Sufficiency of the Affidavit

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, Search and Seizure, § 3.7(d) (5th ed. 2012). As the Supreme Court stated in *Illinois v. Gates*, 462 U.S. 213, 238 (1983): "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. **See** *id.*; *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010). "Probable cause exists when a practical, common-sense inquiry that considers the totality of the circumstances set forth in the information before the issuing judge yields a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cartier*, 543 F.3d 442, 446 (8th Cir. 2008); **see** *Gates*, 462 U.S. at 238. Courts provide "great deference to the issuing judge's determination that [the] affidavit established probable

7

cause." ***United States v. Keele***, 589 F.3d 940, 943 (8th Cir. 2009). The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> This court reviews a magistrate judge's determination of probable cause "to ensure that the magistrate had a substantial basis for. . . concluding that probable cause existed." ***United States v. Gladney***, 48 F.3d 309, 312 (8th Cir. 1995) (**quoting** ***Illinois v. Gates***, 462 U.S. 213, 238 (1983)) (alteration in ***Gladney***). "The task of the issuing magistrate is to make 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" ***Id.*** (**quoting** ***Gates***, 462 U.S. at 238). Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon "only that information which is found within the four corners of the affidavit." ***Id.*** (**quoting** ***United States v. Leichtling***, 684 F.2d 553, 555 (8th Cir. 1982)).

***United States v. Olvey***, 437 F.3d 804, 807 (8th Cir. 2006); **see also**, ***United States v. Dukes***, 758 F.3d 932, 936 (8th Cir. 2014) ("The issuing judge should review the affidavit with a 'common sense approach and not in a hypertechnical fashion.'").

The affidavit in support of the warrant contained sufficient probable cause to issue the warrant. Deputy Koetter averred the location had been under active surveillance for approximately four months immediately prior to the issuance of the search warrant. **See** TR. 7. During this timeframe, Deputy Koetter observed numerous individuals enter the location and leave after a few minutes' time. **See** TR. 8. Deputy Koetter also observed vehicles stop in the alley behind the location and drop individuals off, only to pick the individuals up minutes later. ***Id.*** These events occurred before and after midnight. ***Id.*** Deputy Koetter stated these activities led him to believe narcotics was being distributed from the location, based on his training and experience. ***Id.*** at 7-8. The informant provided Deputy Koetter with information of a large quantity of methamphetamine at the location and provided specific details as to its whereabouts and the individuals present at the location. ***Id.*** at 7. The informant stated Reed had left for Colorado on July 8, 2014, and he returned with methamphetamine on July 10, 2014. ***Id.*** Affording the issuing judge great deference, the information set forth in the affidavit was sufficient for the issuance of the search warrant. **See** ***United States v. Carpenter***,

8

422 F.3d 738, 744 (8th Cir. 2005) (determining probable cause existed for a search warrant for defendant's home where a tip by a confidential informant was provided in person so officers could assess informant's credibility and the tip was corroborated through the officer's own investigation which confirmed location of house, name, and address).

### 1. Reliability of the Informant

"The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." **United States v. O'Dell**, 766 F.3d 870, 874 (8th Cir. 2014). "If the affidavit relies on information from an informant, 'the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search.'" **United States v. Rodriguez**, 711 F.3d 928, 936 (8th Cir. 2013) (**quoting Solomon**, 432 F.3d at 827). "Information may be sufficiently reliable to support a probable cause finding if the person supplying the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." **O'Dell**, 766 F.3d at 874; **see also Winarske**, 715 F.3d at 1067; **United States v. Williams**, 477 F.3d 554, 559-60 (8th Cir. 2007) (clarifying that information from a confidential informant may be sufficient to support a finding of probable cause if the informant has a history of providing reliable information, or if the information is at least partly corroborated, even if the informant's criminal history is not provided to the magistrate issuing the warrant). "An informant may also prove himself to be a reliable source for law enforcement by providing predictive information about a meeting time or place." **United States v. Winarske**, 715 F.3d 1063, 1067 (8th Cir. 2013). An affidavit for a warrant need not contain "an averment of previous reliability" of an informant. **United States v. Harris**, 403 U.S. 573, 581-82 (1971). "Although 'an informant's veracity, reliability and basis of knowledge are all highly relevant' in determining whether probable cause exists when an affidavit is based on hearsay information, they are not 'entirely separate and independent requirements to be rigidly exacted in every case.'" **United States v. Stevens**, 530 F.3d 714, 718 (8th Cir. 2008) (**quoting Gates**, 462 U.S. at 230).

Although there is nothing in Deputy Koetter's affidavit about the informant's track record, the lack of information does not undermine the validity of the affidavit in this instance. First, the informant provided an in-person statement, which allowed Deputy Koetter to assess the informant's veracity. See **United States v. Gabrio**, 295 F.3d 880, 883 (8th Cir. 2002) (stating an in-person statement allowed the officer to assess informant's veracity). Second, the information was provided shortly before the application for the search warrant. Deputy Koetter arrested the informant at 9:54 p.m. on July 10, 2014, after making a traffic stop near the location. The informant had methamphetamine in her purse. The informant disclosed to Deputy Koetter that as of July 10, 2014, there was seven or eight ounces of methamphetamine at the location. Third, the informant provided a detailed, eyewitness account of the activity within the garage. See *Illinois v. Gates*, 462 U.S. 213, 234 (1983) ("[A] detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles [a] tip to greater weight[.]"). The informant provided specific details as to the methamphetamine's whereabouts and the individuals present at the location. Lastly, the informant's information corroborated Deputy Koetter's suspicions, based on his training and experience, and surveillance of the location. Accordingly, the court finds sufficient information existed to find the informant was reliable. Based upon a practical, common-sense decision, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying information, there was a fair probability that contraband or evidence of a crime would be found at the location.

### 2. Stale Information

Stale information cannot be considered when assessing probable cause. "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." **United States v. Vore**, 743 F.3d 1175, 1179 (8th Cir. 2014). "Probable cause must exist when a warrant is issued, not merely at some earlier time. . . ." **United States v. Morrison**, 594 F.3d 626, 631 (8th Cir. 2010). There is no bright-line test for determining when information is stale. See **United States v. Preston**, 685 F.3d 685, 690 (8th Cir. 2012). The court must consider "[t]ime factors . . .

in the context of a specific case and the nature of the crime under investigation." ***United States v. Jeanetta***, 533 F.3d 651, 655 (8th Cir. 2008). "The lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." ***United States v. Lemon***, 590 F.3d 612, 614 (8th Cir. 2010). When investigating ongoing criminal activity, intervals of weeks, months, or even years between the last described act and the application for a warrant does not necessarily make the information stale. ***Morrison***, 594 F.3d at 631; ***Lemon***, 590 F.3d at 614. "Time factors must be examined in the context of a specific case and the nature of the crime under investigation." ***Jeanetta***, 533 F.3d at 655 (citing ***United States v. Koelling***, 992 F.2d 817, 822 (8th Cir. 1993)). "The ongoing nature of methamphetamine distribution also supports the continued existence of probable cause." ***United States v. Tenerelli***, 614 F.3d 764, 770 (8th Cir. 2010).

In the affidavit Deputy Koetter averred the location had been under active surveillance for approximately four months. **See** TR. 7. Deputy Koetter arrested the informant at 9:54 p.m. on July 10, 2014. ***Id.*** The informant stated Reed returned with methamphetamine on July 10, 2014. ***Id.*** The informant was able to identify the quantity of methamphetamine, drug paraphernalia, and the location of the methamphetamine. ***Id.*** Deputy Koetter provided his sworn telephonic statement at 11:27 p.m. on July 10, 2014. **See** ***id.*** at 5. The warrant was issued at 12:10 a.m. on July 11, 2014, and executed at 12:33 a.m. the same day, thus there was a minimal lapse of time between the discovery of the information and the application and execution of the search warrant. **See** Ex. A; Ex. C. While Deputy Koetter admitted he did not know when the informant obtained the methamphetamine, there was sufficient timely information that methamphetamine was present at the location. The court finds the information set forth in the affidavit was not stale and could properly form the basis of probable cause.

D.   ***Leon*** **Good Faith Exception**

Even assuming arguendo, that probable cause was lacking in sufficiency, the ***Leon*** good-faith exception would allow the admissibility of the evidence seized. In ***United States v. Leon***, 468 U.S. 897 (1984), the Supreme Court carved out an exception to the exclusionary rule by determining evidence, which would otherwise be

inadmissible because the warrant was invalid, would nonetheless be admissible if the evidence was obtained by law enforcement officers who were acting in reasonable good faith reliance upon the search warrant issued by a neutral and detached magistrate. The Supreme Court found reliance on an invalid search warrant would not be reasonable if: (1) the affidavit included information the officer knew was false or would have known to be false except for the officer's reckless disregard for the truth and such information misled the issuing magistrate; (2) the issuing magistrate abandoned a neutral and detached role; (3) the warrant was based on an affidavit with so few indicia of probable cause that an objective belief in its validity would be unreasonable; and (4) the warrant itself was so facially deficient that the executing officers could not rely upon its validity. **See *Leon***, 468 U.S. at 923. None of those exceptions apply in this case. Accordingly, the motion to suppress should be denied.

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

1. Reed's Supplement to Motion to Suppress (Filing No. 49) be denied.
2. Knight's Motion to Suppress and Request for Evidentiary Hearing and Oral Argument (Filing No. 44) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 4th day of February, 2015.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge